## MASON v. T. & P. OPTICAL MFG. CO., Inc.

District Court, S. D. New York.
March 21, 1941.

Milton M. Crook, of New York City, for plaintiff.

Maurice Adda, of New York City, for defendant.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

## I. Findings of Fact.

1. From 1934 until his discharge on April 3, 1940, plaintiff was employed by defendant in adjusting and setting optical frames and temples at defendant's factory in New York during ordinary business hours and at plaintiff's home in New Jersey outside of such hours.

2. From October 24, 1938—the effective date of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206(b), 207(d)—until April 3, 1940, plaintiff received from defendant for shop work an average rate of pay of 85¢ per hour, and for work at home the rates set by mutual agreement of 21¢ for each hundred pairs of temples curled, 3¢ for each Semi-Rimless Frame adjusted, and 5¢ for each Arcway Frame adjusted.

3. Receipts issued to plaintiff by defendant for work at home, plaintiff's Exhibit I (tabulated by weeks in plaintiff's Amended Bill of Particulars, par. 3, and by days in defendant's Exhibit A), show that during the period referred to in paragraph 2 above plaintiff curled 268,620 pairs of temples, and adjusted 15,733 Semi-Rimless Frames and 5,767 Arcway Frames, for which defendant paid him $564.10, $471.99, and $288.35 respectively, or a total of $1,324.44. Plaintiff made no objection to the amount of any of these payments as they were made during the course of his employment or until after his discharge from employment on April 3, 1940.

4. No records of the work at home other than these receipts were made, and the actual time spent therein can be arrived at only as a matter of deduction from the time which would be required to adjust the number of pieces shown on the receipts.

5. Plaintiff's estimate that his average rate of production was 250 pairs of temples or 25 S.R. Frames or 18 Arcway Frames each per hour affords the basis for his claim, fully set forth in his Amended Bill of Particulars, pars. 2–4, that he worked at home during this period 2,025 hours, at an average rate of 65¢ per hour; that of these, 266 hours (later conceded to be 434), not being overtime, as not exceeding (together with his ordinary shop hours) the legal maximum, represented an underpayment to him of 20¢ per hour (85¢–65¢) or $53.20; and that the balance was overtime, for which he should have been paid at the rate of $1.27½ per hour as time and one-half, instead of 65¢ per hour, or an underpayment of $1,099.37—for which sums, together with liquidated damages of like amount and counsel fees, he demands judgment under the Act, 29 U.S.C.A. §§ 206(a), 216(b).

6. In cost computation tests made in 1939, plaintiff was timed by his supervising foreman at a rate of production per hour of 600 pairs of temples curled or 46 S.R. Frames adjusted or 30 Arcway Frames adjusted.

7. Upon the conflicting evidence herein I conclude that plaintiff's rate of production under the circumstances should not at any time have fallen below 450 pairs of temples curled or 42 S.R. Frames or 26 Arcway Frames adjusted per hour, and that a fair over-all rate of production for the hours he labored would have been for him 475 pairs of temples curled, 43 S.R. Frames adjusted, or 27 Arcway Frames adjusted per hour.

8. It was conceded that of the time spent for work at home, 434 hours was not overtime, as not exceeding (together with the ordinary shop hours) the limits allowed by the Act, 29 U.S.C.A. § 207, of 44 hours per week until October 24, 1939, and of 42 hours thereafter.

9. Making allowance for 434 hours to be paid for at the regular rate of 85¢ per hour, plaintiff, if working only at the minimum rate stated in 7 above, would have worked 759½ hours for $955.54, or barely over a cent and a half per hour below the required minimum; while if working at the fair rate as found in 7 above, he would have worked 711 hours for the same sum, or nearly 7¢ per hour in excess of the required minimum.

100

## II. Conclusions of Law.

 1. This court has jurisdiction of the action as one arising under a law regulating commerce. 28 U.S.C.A. § 41(8); 29 U.S.C.A. § 216(b).

 2. Defendant paid plaintiff in excess of the minimum requirements of the Fair Labor Standards Act, 29 U.S.C.A. § 206, for all labor performed for it, including home and overtime work, and he therefore has no claim against it under the Act.

3. Judgment should be entered herein for defendant, with costs.

### Memorandum.

As the findings of fact filed herein show, this claim for amounts alleged to be due for unpaid ordinary and overtime wages under the Fair Labor Standards Act of 1938 has to be built up by computation from the number of pieces of home work done and the supposed time taken upon each piece. Plaintiff, though claiming to be a skilled mechanic of long experience in the trade, and receiving a wage commensurate therewith, nevertheless testified to the low rate of production he claims, and supported this testimony by saying that occasionally he worked all night until 4:00 and 5:00 A. M. and often until 2:00 A. M. The hours indicated by this testimony, continued week in and week out for years, seem to me incredible on their face; they point to periods of night work, after regular work days in New York, that no human being could carry. Looking at the work receipts, Exhibit I, and even disregarding the Monday receipts, as covering work over the week-end, we find some evenings of 15 or 16 hours, and many of upwards of 10 hours of work if plaintiff's figures are accepted. The unfavorable inference thus suggested was reënforced by plaintiff's demeanor on the witness stand, and his reaction to cross-examination, as when he said that evening visitors to his home counted the pieces completed, or to be completed later at night, while he kept on working.

Against this defendant presented satisfactory testimony of its shop foreman showing rates of production by plaintiff and by other comparable workmen; these seemed to me trustworthy, even though they need not be resorted to in toto, since a moderate intermediate will show no underpayment. The operations as demonstrated in court appeared to be of a simple and routine nature, merely preparatory to shipment of the frames—of course without lenses—to the opticians and retailers who have to make the real adjustment of eyeglass or spectacle to the human face. Upon rates of production which seem to me reasonable, plaintiff's case vanishes.

Judgment directed for defendant, with costs.